STATE of Wisconsin, Plaintiff-Respondent,

v.

Paul A. WILINSKI, Defendant-Appellant.

Court of Appeals

*No. 2008AP404–CR. Submitted on briefs September 9, 2008. —Decided October 7, 2008.*

2008 WI App 170

(Also reported in 762 N.W.2d 399.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jefren E. Olsen*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas J. Balistreri*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J.  Paul Wilinski appeals an order of commitment for institutional care entered after he was found not guilty by reason of mental disease or defect. Wilinski argues the circuit court's finding that he would pose a significant risk of bodily harm to himself or others if he were placed on conditional release was not supported by sufficient evidence. We disagree and affirm the order.

## BACKGROUND

¶ 2.  On November 2, 2006, Wilinski invited Nancy Looney to his apartment. When she arrived, Wilinski began to tear off her clothes and push her up

the stairs. He then dragged her into the bathroom and tried to force her into the shower. While repeatedly telling Looney he was going to kill her, Wilinski yanked her hair, attempted to choke her, and tried to push her head through a hole in the bathroom floor. Looney managed to escape when friends of Wilinski's arrived at the apartment. When authorities came to the scene, Wilinski appeared on the porch naked, with blood on his chest and hands, and announced, "Yeah, I did it, I kicked her fucking ass. I should have killed the bitch." As authorities attempted to take Wilinski into custody, he punched the deputy sheriff and police chief and elbowed a third officer in the face.

¶ 3. Wilinski was charged with three counts of battery to a law enforcement officer and one count each of attempted first-degree intentional homicide and substantial battery. After Wilinski entered pleas of not guilty by reason of mental disease or defect to all five charges, the court ordered Wilinski undergo an evaluation with a court-appointed psychologist. The State asked Dr. Michael Galli, a clinical psychologist with the Wisconsin Forensic Unit, to perform an examination as well. Both psychologists concluded Wilinski met the necessary criteria for not guilty by reason of mental disease or defect.

¶ 4. Wilinski and the State then reached an agreement. The State agreed to reduce the attempted intentional homicide charge to reckless injury and the substantial battery charge to false imprisonment. Wilinski agreed to plead no contest to the reduced charges and the three counts of battery to a law enforcement officer. In exchange, the State stipulated he was not responsible due to mental disease or defect. After finding Wilinski guilty of all five counts, the court found Wilinski not guilty by reason of mental disease or defect. It then ordered a predisposition investigation to

determine whether to commit him to institutional care or conditional release.

¶ 5. At Wilinski's disposition hearing, Dr. Galli testified that Wilinski has received significant inpatient and outpatient psychiatric care for more than a decade for bipolar affective disorder and alcohol abuse. This care included treatment following an incident in 1995 when Wilinski was found not guilty by reason of mental disease or defect to two counts of battery to a law enforcement officer. Wilinski was placed on conditional release after this incident, but his release was revoked when he attacked an ex-girlfriend. He was then placed in the Winnebago Mental Health Institute, where it took almost two years to stabilize him.

¶ 6. Galli concluded Wilinski could function appropriately in a community treatment program as long as he were monitored every day to ensure he was taking his medication and abstaining from alcohol. Galli recommended Wilinski remain on the program for twenty-seven years, the maximum length of commitment the court could order. He acknowledged that without such monitoring Wilinski would be dangerous to others and himself.

¶ 7. Sally Fleischmann, a manager with Lutheran Social Services, authored the predisposition investigation report. Fleischmann recommended Wilinski be placed on conditional release. She testified that she could initially place Wilinski in a transitional home in Marathon County for six months to a year. While there, he would be supervised during the day by staff and monitored at night by an electronic monitoring program. Then he would be moved to a less restrictive setting in his county of residence, Oconto. Lutheran Social Services would work with Oconto County to set up a plan for him to receive as close to the same services

he had received in Marathon County as possible. However, Fleischmann acknowledged she had not envisioned daily monitoring for twenty-seven years, as recommended by Galli.

¶ 8. Finally, Bruce Retzlaff, the clinical services manager for the Oconto County Department of Health and Human Services, testified about Oconto County's ability to meet Wilinski's needs. He stated the County did not presently have the capacity to monitor Wilinski daily for twenty-seven years, but he told the court he would try to contract with an organization that could provide this care. If the County could not secure such a contract, he would need to "kind of team it from a day-to-day basis." He was unaware of any case where his department had participated in such an extensive monitoring program.

¶ 9. The court considered the nature of Wilinski's offense, his mental history, and the services available if he were released. It concluded the services necessary to ensure Wilinski would not pose a significant risk of harm were not available for the time period needed or in the location he would ultimately be placed. It therefore ordered Wilinski committed to institutional care.

## STANDARD OF REVIEW

¶ 10. When a person is found not guilty by reason of mental disease or defect, a court must issue an order specifying whether the person will be committed to institutional care or placed on conditional release. WIS. STAT. § 971.17(3)(a).[1] The court must "order institutional care if it finds by clear and convincing evidence that conditional release of the person would pose a significant risk of bodily harm to himself or herself or to

___

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

others or of serious property damage." *Id.* However, "if the court does not make this finding, it shall order conditional release." *Id.* In determining whether a person poses significant risk to himself or herself, others, or property, the court may consider

> the nature and circumstances of the crime, the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, what arrangements are available to ensure that the person has access to and will take necessary medication, and what arrangements are possible for treatment beyond medication.

*Id.*

¶ 11. Wisconsin courts have not yet articulated the standard for reviewing a circuit court's order for commitment under WIS. STAT. § 971.17(3)(a). The State proposes that courts should review such orders under a sufficiency of the evidence standard. Wilinski seems to concede this is the appropriate standard of review. We are also persuaded. As the State points out, our supreme court adopted the sufficiency of the evidence standard of review for orders under WIS. STAT. § 980.08(4), which provides for the supervised release of sexually violent persons. *State v. Brown*, 2005 WI 29, 279 Wis. 2d 102, 693 N.W.2d 715. Much like § 971.17(3)(a), the statute in *Brown* required the court to order institutional care if the State proved by clear and convincing evidence it was "substantially probable" the defendant would engage in acts of sexual violence if he was not institutionalized.[2] It also contained a list of factors for the court to consider nearly identical to the one in § 971.17(3)(a).

---

[2] The subsection with this language, WIS. STAT. § 980.08(5), was repealed by 2005 Wis. Act 434, § 121; however, this does not alter the substance of our analysis. Additionally, the *Brown*

¶ 12. The sufficiency of the evidence test asks whether a circuit court could reasonably be convinced by evidence it has a right to believe and accept as true. *Brown*, 279 Wis. 2d 102, ¶ 40. If the evidence supports multiple reasonable inferences, we will adopt the inference the circuit court adopts. *Id.* When applying this standard, reviewing courts give "deference to the circuit court's strength in determining the credibility of witnesses and in evaluating the evidence." *Id.*, ¶ 44. We "draw not only on a circuit court's observational advantage, but also on the circuit court's reasoning." *Id.*

## SUFFICIENCY OF THE EVIDENCE

¶ 13. Here, the circuit court first considered the nature of the offense. The circumstances of the crime are set forth in detail in the record, and neither party disputes the severity of Wilinski's actions. The fact that Looney could have been killed or at the very least severely injured if Wilinski's friends had not come to the door supports the court's finding that Wilinski would pose a significant risk of harm if released.

¶ 14. The court then examined Wilinski's history of mental illness. It pointed to the incident leading to Wilinski's last revocation of conditional release, noting Wilinski

> [b]roke into [his ex-girlfriend's] house. Grabbed the phone out of the woman's hand. Pushed her to the floor.

court distinguished Wis. Stat. § 980.08(4) from the not-guilty-by-reason-of-mental-disease-or-defect statute. However, the statute the *Brown* court discussed was an earlier version of Wis. Stat. § 971.17, which contained a more subjective test than the present statute. *State v. Brown*, 2005 WI 29, ¶ 29, 279 Wis. 2d 102, 693 N.W.2d 715.

[He] [r]ipped the phone out of the wall, and then picked the lady up by the throat and said, "I'm going to kill you, bitch."

Wilinski discounts this incident, arguing it occurred before he accepted his diagnosis and before his medication was stabilized. Nevertheless, the court's inference that Wilinski's failure to comply with his prior conditional release indicates a poor track record of complying with treatment was a reasonable one.

¶ 15. The court next considered the expert testimony on Wilinski's mental state. It pointed to Galli's testimony that "there are no guarantees [Wilinski could be released to a less restrictive environment than transitional housing] and that Wilinski is a dangerous man when he is off his medications." It also noted the record contained testimony from Dr. Norma Cruz, who concluded Wilinski could relapse if he went off his medications for just one week, and that if he is also drinking while he is off his medications, he could kill someone. It is undisputed Wilinski is dangerous if he does not take his medication or refrain from alcohol. This evidence more than amply supports the conclusion he would be dangerous if released.

¶ 16. Wilinski argues the court should have found he was not dangerous if he stayed on his medication and then ordered him released and monitored daily. Evidence Wilinski is responsive to medication, however, would only support his request for release if he were medication-compliant. The court concluded Wilinski's medication responsiveness was mitigated by his history of refusing to comply with treatment.

¶ 17. Finally, the court considered the services advanced and proposed for Wilinski in Oconto County. The court concluded these services fail to "give any assurances to the court that . . . we would not have the

same type of recurrences" as when Wilinski previously violated his conditional release.[3] While the court acknowledged Marathon County's services would be adequate, it noted these services would only be available for six months to a year. Wilinski argues the deficiency of the proposed services is not evidence he would pose a significant risk of harm. The State responds that the availability of such services is not simply a prospective detail, but a statutorily enumerated factor the court should consider. We agree.

¶ 18. The level of certainty required by WIS. STAT. § 971.17(3)(a) is clear and convincing evidence. Although this requires certitude greater than preponderance of the evidence, absolute certainty is not required. *Kuehn v. Kuehn*, 11 Wis. 2d 15, 26, 29–30, 104 N.W.2d 138 (1960). As directed by § 971.17(3)(a), the court considered the nature and circumstances of Wilinski's crime; his mental history and present mental condition; where he would live if released; and what arrangements would be available to ensure he has access to and will take necessary medication. We conclude the court could reasonably be convinced by clear and convincing evidence that Wilinski would pose a significant risk of bodily harm to himself or others if released. The court's order is therefore supported by sufficient evidence.

*By the Court.*—Order affirmed.

---

[3] The circuit court appeared to suggest Wilinski's conditional release was revoked twice. Wilinski, however, notes his release was only revoked once. We are not persuaded—in light of the court's lengthy description of Wilinski's prior violation— that the court would have reached a different conclusion had it correctly noted Wilinski had only had his release revoked once.