PER CURIAM.
¶1 Graham Stowe was found not guilty by reason of mental disease or mental defect (NGI) based on charges of violent criminal conduct in 2004 and was committed to the custody of the Department of Health Services (the department). Stowe now appeals a circuit court order denying his most recent petition for conditional release from department custody under WIS. STAT. § 971.17(4) (2017-18), and appeals the court's order rejecting his arguments that § 971.17(4)(d) is unconstitutional on its face and as applied to him.[1] Stowe also argues that the State failed to prove by clear and convincing evidence that, if conditionally released, he would pose a significant risk of bodily harm to himself or others or a significant risk of property damage. See id. We reject each of Stowe's arguments and affirm.
BACKGROUND
¶2 A person found NGI, sometimes referred to as an NGI acquittee, may be committed to the custody of the department. See WIS. STAT. § 971.17 ; State v. Fugere , 2019 WI 33, ¶¶32, 44, 386 Wis. 2d 76, 924 N.W.2d 469. NGI acquittees may file periodic petitions for conditional release from custody. See WIS. STAT. § 971.17(4)(a).
¶3 Pertinent to this appeal, when an NGI acquittee petitions for conditional release, the circuit court "shall grant" the petition "unless it finds by clear and convincing evidence that the person would pose a significant risk of bodily harm to himself or herself or to others or of serious property damage if conditionally released." WIS. STAT. § 971.17(4)(d).
¶4 Regarding Stowe's history, we provided the following pertinent background when we rejected Stowe's appeal of the circuit court's denial of an earlier petition for conditional release:
A criminal complaint alleged that, in the early morning hours of February 9, 2004, Stowe entered his ex-girlfriend's residence and forced her and their two-year-old daughter out of bed at gunpoint. Stowe subsequently tied up and handcuffed his ex-girlfriend, her minor brother, and her father. He beat her father with a baton and doused him with gasoline. Stowe repeatedly stated he was going to take his ex-girlfriend somewhere and force her to watch him commit suicide. He also threatened to kill her father and sister. Stowe's ex-girlfriend was ultimately able to call 911, and she later escaped with her daughter after police arrived at the residence. While police remained outside the residence, Stowe took some pills-after again indicating he wanted to kill himself-and then passed out. His ex-girlfriend's father and brother were then able to escape.
Stowe was charged with eleven counts as a result of these events. He entered [NGI] pleas ... to each of the charges against him. Stowe subsequently entered no contest pleas to first-degree recklessly endangering safety, intimidation of a victim, felony bail jumping, and three counts of false imprisonment. The circuit court found Stowe NGI with respect to those offenses, and the remaining charges were dismissed. The court ordered Stowe committed to the Department of Health and Family Services for institutional care for thirty-nine years and six months.
In April 2007, the circuit court entered an order conditionally releasing Stowe. However, in June 2009, the [department] petitioned to revoke Stowe's conditional release. The petition alleged Stowe had violated his rules of conditional release by entering a bar where his ex-girlfriend worked, and an attached report indicated he had repeatedly violated his rules on other occasions, despite numerous warnings. The circuit court revoked Stowe's conditional release in July 2009.
Stowe petitioned for conditional release three more times between 2010 and 2012. The circuit court denied each of Stowe's petitions, and we affirmed those decisions on appeal. See State v. Stowe , No. 2012AP2644-CR, unpublished slip op. (WI App July 30, 2013); State v. Stowe , No. 2011AP2920-CR, unpublished slip op. (WI App Oct. 10, 2012); State v. Stowe , No. 2010AP2458-CR, unpublished slip op. (WI App June 7, 2011).
In July 2013, Stowe escaped from a minimum security unit at Mendota Mental Health Institute. The record indicates Stowe "impulsively took off from [Mendota] when he thought that security guards were going to place him in a more secure unit." He evaded capture for over three months. He was subsequently convicted of escape and sentenced to prison. After serving the initial confinement portion of his sentence, Stowe was returned to Mendota to serve the extended supervision portion of his sentence while serving his commitment and was placed in a maximum security unit.
State v. Stowe , No. 2016AP2367-CR, unpublished slip op. at ¶¶2-6 (WI App Dec. 27, 2017) (Stowe 2017 ) (affirming circuit court's denial of petition for conditional release filed in February 2016).
¶5 In December 2016, Stowe filed the petition for conditional release at issue here. The circuit court appointed clinical psychologist Dr. William Merrick to evaluate Stowe and prepare a psychological evaluation.
¶6 Before the conditional release trial, Stowe asserted briefly that he would be raising facial and as-applied constitutional challenges to unspecified provisions in WIS. STAT. § 971.17, based on the Due Process and Equal Protection Clauses of the federal Constitution. Stowe asserted in this connection that he was "no longer mentally ill and there is no medical justification in continuing to hold him at Mendota Mental Health Institute without providing any treatment for him."
¶7 As of the time of the conditional release hearing, Dr. Merrick had diagnosed Stowe with three mental disorders that Dr. Merrick testified are not treatable through medication but can be treated through "psychotherapeutic techniques." The parties do not dispute that the personality disorders for which Dr. Merrick diagnosed Stowe do not qualify as NGI diseases or defects for purposes of initial confinement. See WIS. STAT. § 971.15(2) ("As used in this chapter, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct"); Simpson v. State , 62 Wis. 2d 605, 612, 215 N.W.2d 435 (1974) (excluding an "antisocial personality disorder" from the definition of "mental disease or defect" in the meaning of § 971.15 ).
¶8 The court denied the petition for conditional release after concluding that the State had met its burden to show by clear and convincing evidence that release would not be appropriate.
¶9 Stowe filed a motion and brief, more detailed than his pre-hearing submission, challenging the constitutionality of WIS. STAT. § 971.17(4) as applied to him, implicitly challenging in particular the conditional release provision in para. (d), again based on his due process and equal protection rights. The court denied this challenge in a written decision and order.
¶10 Stowe appeals, requesting that we reverse and remand with directions to grant Stowe's petition for conditional release and to order creation of a conditional release plan.
DISCUSSION
¶11 We address the issues raised on appeal in the same order in which the parties address them.
I. FACIAL CONSTITUTIONAL CHALLENGE
¶12 For his facial constitutional challenge, Stowe renews an argument that we rejected in our unpublished decision in Stowe 2017 , which we now reject again for the same reason. See Stowe 2017 , No. 2016AP2367-CR, ¶39. Stowe argues that WIS. STAT. § 971.17(4)(d) is unconstitutional on its face because it permits the continued confinement of NGI acquittees based on dangerousness alone. We rejected this argument in Stowe 2017 , based on State v. Randall , 192 Wis. 2d 800, 806-07, 532 N.W.2d 94 (1995) (Randall I ) ("[I]t is not a denial of due process for an insanity acquittee who has committed a criminal act to be confined in a state mental health facility for so long as he or she is considered dangerous, provided that the commitment does not exceed the maximum term of imprisonment which could have been imposed for the offense charged.").[2] See Stowe 2017 , No. 2016AP2367-CR, ¶39. Stowe's position is that our supreme court incorrectly decided Randall I , and effectively asks us to modify Randall I , which we cannot do. See Cook v. Cook , 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (court of appeals lacks authority to overrule, modify, or withdraw language from a supreme court decision).
II. AS APPLIED CONSTITUTIONAL CHALLENGE
¶13 Stowe argues that WIS. STAT. § 971.17(4)(d), as the circuit court applied it in denying his petition, violates the Due Process Clause because his continued confinement at Mendota has no therapeutic value. See Randall I , 192 Wis. 2d at 817 ("To be constitutionally permissible, the continued confinement of a sane but dangerous [NGI] acquittee in a mental health facility, must have some therapeutic value.").[3] We reject this argument based on our interpretation of Randall I in State v. Randall , 222 Wis. 2d 53, 65-66, 586 N.W.2d 318 (Ct. App. 1998) (Randall II ), a published decision of this court.
¶14 A constitutional challenge to the specific application of a statute to the challenger is based on the particular facts of the case, and the issue is whether "the law actually violates the challenger's rights." Blake v. Jossart , 2016 WI 57, ¶26, 370 Wis. 2d 1, 884 N.W.2d 484. If so, " 'the operation of the law is void as to the party asserting the claim.' " Id. (quoted source omitted).
¶15 Stowe apparently intends to challenge the circuit court's findings that he was offered therapy at Mendota, which he refused to accept, and that, if Stowe had cooperated, this therapy would have had therapeutic value to him. This argument apparently rests on the premise that, under Randall I , the State must establish that the treatment offered to Stowe at Mendota, or that was available to him there, was therapeutically valuable to him. One problem with this argument, which we conclude is dispositive, is that any basis that might have existed under Randall I for him to make this argument disappeared with our interpretation of Randall I in Randall II .
¶16 In Randall II , we held that a circuit court appropriately exercised its discretion, consistent with due process, in declining to instruct jurors that they were required to find a medical justification for Randall's continued confinement. Randall II , 222 Wis. 2d at 64-67. Significant to the issue Stowe raises, we explained the following:
[The court in Randall I ] held, as a matter of law, that there is a "therapeutic value to confining a [currently] sane but dangerous acqui[t]tee to one of this state's mental health facilities." The court [in Randall I ] viewed this therapeutic value in terms of the overall controlled environment which Wisconsin's mental health facilities provide to assist insanity acquittees in overcoming their destructive or dangerous behavior. As the court further explained:
Because this state's mental health facilities provide such comprehensive treatment we cannot conclude that it is punitive to continue an acquittee's confinement based on dangerousness alone. Rather, we conclude that there is a reasonable relationship between the commitment and the purposes for which the individual is committed and, therefore, that insanity acquittees are treated in a manner consistent with the purposes of their commitment.
Therefore, because a Wisconsin insanity acquittee's continued confinement is based on both an initial determination of the cause of his or her criminal conduct, as well as a finding of continued dangerousness, and because Wisconsin's mental health institutions provide an environment designed to reduce dangerousness, no individual showing that confinement is necessary to address a particular medical treatment is required. This conclusion is also in accord with the United States Supreme Court's recent decision in Kansas v. Hendricks , 521 U.S. 346 [ ] (1997) (upholding the constitutionality of Kansas's sexual predator law despite an acknowledged unavailability of effective treatment for pedophilia). In short, we conclude Randall I establishes that an insanity acquittee is afforded substantive due process by virtue of Wisconsin's entire scheme.
Id. at 65-66.
¶17 In his principal brief, Stowe effectively acknowledges that his as applied challenge is not viable under Randall II . We conclude that this concession is appropriate, given the passage that we have just quoted. Stowe points to conflicting evidence about the degree to which treatment available to him, given his circumstances in Mendota, would be of value to him, challenging circuit court findings on this topic. But we see no way to read Randall II that does not foreclose any argument on the topic of whether it matters if any available treatment is medically required or effective. This is because Randall II categorically rejects any argument that a "dangerous" NGI acquittee who has at least some treatment need (as Stowe undisputably does) must be granted conditional release on the ground that it is unconstitutional to continue to hold him or her because a Wisconsin mental health institution cannot or will not offer specific treatment that is effective in meeting the NGI acquittee's needs. And, Stowe does not attempt to argue that there was evidence before the circuit court that, since the time of Randall II , Mendota has changed in such a way that it no longer functions as a mental health institution that provides "an environment designed to reduce dangerousness," employing "medical treatment," to use the terminology of Randall II .
¶18 If we were interpreting Randall I on a clean slate, we question whether we would have reached the same categorical conclusion, at least based on what is contained within Randall I , putting aside other Wisconsin or U.S. Supreme Court precedent. But we are constrained by Randall II . See Cook , 208 Wis. 2d 166, 189-90 (court of appeals functions as a unitary court that speaks with one voice). Given this dispositive point, to the extent that Stowe intends to argue that the circuit court's findings on the topic of availability of therapy of value to Stowe were clearly erroneous, there would be no point in our providing additional pertinent background or addressing the issue.
III. SUFFICIENCY OF THE EVIDENCE
¶19 Stowe argues that the State failed to show by clear and convincing evidence that he would pose a significant risk of bodily harm to himself or others. We reject this argument on the ground that the circuit court credited evidence that supports a finding of continued dangerousness to others.
¶20 In determining whether the State has shown "clear and convincing evidence" of "a significant risk of bodily harm to himself or herself or to others or of serious property damage if conditionally released," pursuant to WIS. STAT. § 971.17(4)(d), a court may, but is not required to, consider the following non-exhaustive list of factors: (1) "the nature and circumstances of the crime[s]" ("index offenses"); (2) "the person's mental history and present mental condition"; (3) "where the person will live"; (4) "how the person will support himself or herself"; (5) "what arrangements are available to ensure that the person has access to and will take necessary medication"; and (6) "what arrangements are possible for treatment beyond medication." Id. ; see also State v. Randall , 2011 WI App 102, ¶¶15-16, 336 Wis. 2d 399, 802 N.W.2d 194 (Randall III ).
¶21 We review the circuit court's conditional release determination using the deferential "sufficiency of the evidence" standard. Randall III , 336 Wis. 2d 399, ¶13. This involves review of the record to determine whether credible evidence exists to support the circuit court's finding of continued dangerousness. Id. , ¶17. Stated differently, we ask whether the circuit court could " 'reasonably be convinced by evidence it ha[d] a right to believe and accept as true.' " Id. , ¶13 (quoting State v. Wilinski , 2008 WI App 170, ¶12, 314 Wis. 2d 643, 762 N.W.2d 399 ). "If so, we affirm, despite the fact that there may be evidence and inferences to the contrary." Id. , ¶17. Moreover, "we give deference to the [circuit] court's determination of credibility and evaluation of the evidence and draw on its reasoning." Id. , ¶14.[4]
¶22 We now provide additional pertinent background. At the hearing the circuit court considered a letter that the court had recently received from department staff (the department's letter), written in response to Stowe's petition for conditional release at issue in this appeal. The department's letter summarized "Mr. Stowe's status at [Mendota], his course of treatment, and his progress." The department's letter explained that Stowe was then residing in the Admission Treatment Unit, which is a maximum security unit in Mendota, "due to the nature of his offense and due to" the 2013 escape from Mendota.
¶23 Also at the hearing, Dr. Merrick testified that it was his "opinion to a reasonable degree of professional certainty that Mr. Stowe poses a significant risk of bodily harm to others, but not to himself and not serious property damage, if he were to be conditionally released to a supervised setting in the community at this time." Dr. Merrick's conclusions rested in part on his interpretation of the contents of the department's letter. He testified that, although Stowe's personality disorders cannot be treated through medication, the department's letter reflects that the department's "treatment team believes that psychotherapeutic techniques which are frequently used to treat individuals with personality disorders would be helpful to Mr. Stowe in further developing interpersonal skills, gaining insight into his condition, and reaching his goals." Dr. Merrick testified that, although he was unsure of the details regarding the specific therapy available to Stowe in the ATU, no techniques had been used to treat Stowe because Stowe "has refused to meet with his treatment team." Dr. Merrick attributed Stowe's refusal to cooperate with the team to Stowe's "lack of trust" that "group therapy would be in his best interest" and Stowe's apparent belief that group therapy would give Mendota staff "more things to hold against" Stowe.
¶24 Dr. Merrick testified further, in pertinent part, that Stowe's refusal to cooperate was one contributing factor in Dr. Merrick's conclusion that Stowe poses significant risk of bodily harm to others. To this end, Dr. Merrick noted that Stowe had, in recent times, become "much more adamant in refusing to cooperate, to not be aware of or acknowledge the needs of the institution, to [not] work within the rules."
¶25 At the close of the hearing, the court found that Stowe had, in fact, refused treatment, despite "extraordinary efforts" to encourage him to participate and that Stowe has been denying "a need for change and a need for treatment at its most basic level."
¶26 In a subsequent written decision and order denying Stowe's constitutional arguments, the court found Stowe's suggestions that Mendota staff had not offered Stowe treatment or that Stowe had no expectation of being offered treatment "patently false." The court found that Stowe had "repeatedly" refused "offered treatment," including treatment established under "a regular schedule." The court stated that it would not allow Stowe to "obtain conditional release simply by refusing treatment, then claim[ that he is] not being treated and should therefore be released."
¶27 With that background, the following all support the circuit court's finding of continued dangerousness. The nature and circumstances of Stowe's index offenses, as described above, were extreme and demonstrated a capacity for great violence. The circuit court stated that "horrific is likely an understatement" for "one of the more serious crimes" the court had seen as a judge, observing that "the potential for harm[,] beyond the psychological trauma that no doubt resulted[,] is really terrifying, and ... the worst type of harm."
¶28 Regarding Stowe's historical and present mental health condition, the court explicitly or implicitly credited all of the following testimony by Dr. Merrick, which the circuit court characterized as creating the dangerous circumstance in which Stowe sees himself as a victim who has no reason to change. Stowe has a personality disorder with narcissistic and antisocial features, as well as substance abuse disorders that are "in sustained remission in a controlled environment." Stowe has "a maladaptive way of" seeing and thinking about "the world" and of interacting with others. Stowe "still continues to show very little insight or variable insight." Stowe "has become perseverant [in] refusing treatment." Stowe "might" have a "limited" ability to "appreciate" others with whom he has relationships. Stowe "[s]eems to engage in some sort of criminal thinking." And, the trends have been in the wrong direction: Stowe has "become more isolated" and "even more steadfast and adamant in his refusal to cooperate with most institutional procedures, including offers of facilitating second opinion evaluations and individual and group therapies."
¶29 The circuit court also explicitly or implicitly credited the observations in the department's letter that his diagnosis means that Stowe has "an enduring pattern of inner experience and maladaptive behavior that is pervasive, inflexible and leads to impairment."
¶30 It was also reasonable for the circuit court to place weight on the fact of Stowe's escape, and on the court's assessment that Stowe fails to appreciate that his options within Mendota have been limited partly as a result of his decision to escape.
¶31 Stowe argues that the court placed too much weight on "Mr. Stowe's historical mistakes," including the index offenses, and too little weight on such positive indicators as his "strong employment history," his failure to commit a violent offense since his index offenses in 2004, and his marriage to a partner whom he met while on conditional release in 2009. However, Stowe fails to show that, in making its dangerousness determination, the circuit court could not "reasonably be convinced by evidence it ha[d] a right to believe and accept as true." See Randall III , 336 Wis. 2d 399, ¶13.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Stowe does not base any argument on the fact that in Randall I , our supreme court interpreted Wis. Stat. § 971.17(2) (1987-88), which is the predecessor provision to the current Wis. Stat. § 971.17(4)(d). See State v. Randall , 192 Wis. 2d 800, 806, 532 N.W.2d 94 (1995).

As in the circuit court, Stowe does not develop an argument based on his right to equal protection of the laws, and our review is limited to his argument under the Due Process Clause.

We reject an argument regarding our standard of review that Stowe made in State v. Stowe , No. 2016AP2367-CR, unpublished slip op. (WI App Dec. 27, 2017), (Stowe 2017 ) and renews now, for the same reason that we gave in Stowe 2017 :
Citing K.N.K. v. Buhler , 139 Wis. 2d 190, 407 N.W.2d 281 (Ct. App. 1987), Stowe argues we should apply a bifurcated standard of review, upholding the circuit court's factual findings unless they are clearly erroneous, but independently reviewing "whether the facts meet the legal standard for a mental commitment." However, K.N.K. was an appeal from a circuit court's order for protective placement under Wis. Stat. ch. 55. See K.N.K. , 139 Wis. 2d at 197. In State v. Randall , 2011 WI App 102, ¶¶11-17, 336 Wis. 2d 399, 802 N.W.2d 194 (Randall III ), we expressly held that the deferential "sufficiency of the evidence" standard applies when a defendant challenges the sufficiency of the evidence supporting a circuit court's decision to deny a petition for conditional release from an NGI commitment.
Stowe 2017 , No. 2016AP2367-CR, ¶13 n.2.