# COURT OF APPEALS
## DECISION
## DATED AND FILED

## February 15, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP118-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CV190

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

CURTIS F. ANDERSON,

   DEFENDANT-APPELLANT.

APPEAL from orders of the circuit court for Waushara County: DANIEL G. WOOD, Judge. *Affirmed*.

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Curtis Anderson was institutionally committed to the care of the Department of Health Services ("the department") as a person found not guilty by reason of mental disease or defect for disorderly conduct and felony bail jumping in July 2019.[1]  The circuit court granted Anderson's petition for conditional release from institutional care in June 2021.  The circuit court then entered orders revoking Anderson's conditional release and returning him to institutional care in June 2022, and denied his motion for postdisposition relief in January 2023.  On appeal, Anderson argues that due process requires that a court may revoke an NGI defendant's conditional release and order institutional placement only if the court makes a finding of dangerousness; that the State did not present sufficient evidence to prove dangerousness; and that WIS. STAT. § 971.17(3)(e) (2021-22) is unconstitutional to the extent that it permits a court to revoke an NGI defendant's conditional release and order institutional placement without a finding of dangerousness.[2]

---

[1] For ease of reading, we will refer to a person who has entered a plea of not guilty by reason of mental disease or defect as an "NGI defendant."

[2] In this opinion, we, like the parties, use the word "dangerousness" as shorthand for "pos[ing] a significant risk of bodily harm to [the NGI defendant] or to others or of serious property damage."  *See* **State v. Randall**, 192 Wis. 2d 800, 838, 532 N.W.2d 94 (1995) (explaining that in making a dangerousness determination, that is, "that the person would pose a significant risk of bodily harm to himself or herself or to others or of serious property damage," the court may consider the factors set forth in WIS. STAT. § 971.17(4)(d) (concerning an NGI defendant's petition for conditional release from department custody)); **State v. Wood**, 2010 WI 17, ¶35, 323 Wis. 2d 321, 780 N.W.2d 63 (explaining that "a significant risk of bodily harm to himself or herself or to others or of serious property damage" under WIS. STAT. § 971.17(3)(a) (concerning the initial commitment and institutional placement of an NGI defendant) is the "equivalent of dangerousness").

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶2 We assume without deciding that a court is required to find dangerousness in order to revoke conditional release and order institutional placement, and we conclude that the State presented sufficient evidence to support the circuit court's determination of Anderson's dangerousness here. Accordingly, we affirm the circuit court's orders.

## BACKGROUND

¶3 In 2017, the State charged Anderson with one count of misdemeanor disorderly conduct as a repeater, and one count of threatening a judge, two counts of threatening a prosecutor, and four counts of bail jumping, all felonies and all as a repeater. Anderson entered pleas of no contest and not guilty by reason of mental disease or defect to one count of misdemeanor disorderly conduct and two counts of felony bail jumping, and the State dismissed the remaining counts.

¶4 On July 1, 2019, the circuit court issued an order committing Anderson to institutional care for 6 years and 2 months and granting a credit of 582 days.

¶5 On August 2, 2019, the circuit court granted Anderson conditional release. The court revoked the conditional release on August 20, 2019, on the State's petition, because Anderson violated rules and conditions of his conditional release and because the safety of others required the revocation of conditional release after Anderson "engaged in threatening and aggressive behavior" towards staff and residents of the facility where he lived.

¶6 In February 2020, Anderson petitioned for conditional release and the circuit court denied the petition, concluding that the State met its burden to

prove that Anderson's release would create a significant risk of bodily harm to others.

¶7 On December 4, 2020, Anderson filed a second petition for conditional release. The circuit court granted the petition based on a psychologist's evaluation of Anderson and the psychologist's conclusion that Anderson "no longer represent[ed] a significant risk of bodily harm to self, others, or serious property damage." On June 24, 2021, the court entered an order for conditional release, determining that conditional release "would not pose a significant risk of bodily harm to the defendant or others, or of serious property damage."

¶8 On September 7, 2021, the State petitioned to revoke Anderson's conditional release on the grounds that, on September 3, 2021, he stalked his ex-wife, A.B., and knowingly violated a domestic abuse injunction that had been entered in 2016.[3] The injunction included a prohibition against Anderson "being at any location temporarily occupied by" A.B. The circuit court held a hearing on the petition on June 3, 2022.

¶9 At the hearing, the officer who responded to the scene of the September 3, 2021 incident testified as follows. The officer received a complaint of a domestic abuse injunction violation and was dispatched at 3:40 p.m. According to the complaint, A.B. and her son were at the Bluff Bar in Poy Sippi, and Anderson entered the bar and refused to leave. The officer did not see Anderson when the officer arrived at the Bluff Bar to respond to the complaint.

---

[3] To protect the identity of the victim, we refer to the victim as "A.B.," using initials that do not correspond to her real name. *See* WIS. STAT. RULES 809.19(1)(g) and 809.86.

The officer was told that Anderson had left the Bluff Bar 15 minutes before the officer arrived. Approximately 30 minutes later, the officer contacted Anderson and discussed the complaint that "he had been in the bar in violation of his conditional release and in the same bar as [A.B.] which would be [a] violation of his domestic abuse injunction." Anderson said he sat down at the bar in the Bluff Bar and ordered a glass of water and, when he saw A.B., he paid for the water and left the bar. Anderson said he went into the Bluff Bar knowing that A.B. was there and told the officer "so what if I'm keeping tabs on my wife, are you telling me I can't keep an eye on my wife[?]" The officer did not contact any other person in the Bluff Bar to determine how long Anderson was in the bar.

¶10 A portion of the officer's squad car video recording of the officer's conversation with Anderson was played during the hearing. In the portion of the video recording played at the hearing, Anderson said he had "no idea what the rules [of the domestic abuse injunction] are" and that "as soon as I noticed [A.B.]" at the Bluff Bar, "I left." In response to the officer's comment that "[A.B.] explained to me that … she feels like you're kind of following her," Anderson asked, "Well if I am keeping an eye on her what's wrong with that?" and "Now you're trying to tell me I can't keep an eye on [A.B.]?" The officer explained that Anderson and A.B. were divorced, and Anderson responded that he "never had to go to court" and "never signed nothing … [s]o as far … as I'm concerned I'm still married."

¶11 The circuit court granted the petition to revoke Anderson's conditional release, concluding in pertinent part that there was a legitimate concern for the safety of others requiring revocation of Anderson's conditional release. In its order for Anderson's placement in institutional care, the court

determined that "conditional release would pose a significant risk of bodily harm to the defendant or others, or of serious property damage."

¶12 Anderson moved for postdisposition relief seeking an order vacating the revocation and placement orders. The circuit court denied the motion, and this appeal follows.[4]

## DISCUSSION

¶13 A defendant who has been adjudicated not guilty by reason of mental disease or defect is committed to the department. WIS. STAT. § 971.17(1). As part of this commitment, the circuit court must determine whether institutional care is warranted. Sec. 971.17(3)(a). The court may place the NGI defendant in institutional care only "if it finds by clear and convincing evidence that conditional release ... would pose a significant risk of bodily harm to [the NGI defendant] or to others or of serious property damage." Sec. 971.17(3)(a). In making this determination,

> the court may consider, without limitation because of enumeration, the nature and circumstances of the crime, the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, what arrangements are available to

---

[4] Anderson's commitment expired on January 19, 2024. The State argues that this case became moot on January 20, 2024. Mootness is a question of law that this court reviews de novo. *Marathon Cnty. v. D.K.*, 2020 WI 8, ¶16, 390 Wis. 2d 50, 937 N.W.2d 901. "Mootness is a doctrine of judicial restraint. An issue is moot when its resolution will have no practical effect on the underlying controversy." *Id.*, ¶19. Here, the case is not moot even though Anderson's commitment has expired because he may be liable under WIS. STAT. § 46.10(2) for the cost of treatment from the time his conditional release was revoked and he was returned to the custody of the department. *See Sauk Cnty. v. S.A.M.*, 2022 WI 46, ¶¶24-25, 402 Wis. 2d 379, 975 N.W.2d 162 (concluding that an expired WIS. STAT. ch. 51 mental health commitment order does not render an appeal of the order moot in part due to the collateral consequence of "the 'potential' for collection actions because of the liability" for the cost of care under WIS. STAT. § 46.10(2)).

> ensure that the person has access to and will take necessary medication, and what arrangements are possible for treatment beyond medication.

Sec. 971.17(3)(a).

¶14 An NGI defendant placed in institutional care may petition for conditional release after six months. WIS. STAT. § 971.17(4)(a). Similar to an NGI defendant's initial placement in institutional care, the circuit court may deny conditional release only if "it finds by clear and convincing evidence that the person would pose a significant risk of bodily harm to [the NGI defendant] or to others or of serious property damage if conditionally released." Sec. 971.17(4)(d). As in § 971.17(3)(a), in making this determination,

> the court may consider, without limitation because of enumeration, the nature and circumstances of the crime, the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, what arrangements are available to ensure that the person has access to and will take necessary medication, and what arrangements are possible for treatment beyond medication.

Sec. 971.17(4)(d). In both § 971.17(3)(a) and § 971.17(4)(d), the required finding of a "significant risk of bodily harm to" the NGI defendant or others or "of serious property damage" is commonly referred to as a finding of dangerousness. *See State v. Wood*, 2010 WI 17, ¶35, 323 Wis. 2d 321, 780 N.W.2d 63 ("[A] significant risk of bodily harm to himself or herself or to others or of serious property damage" is the "equivalent of dangerousness").

¶15 When a circuit court orders conditional release, the department submits a plan for the NGI defendant's treatment and services. WIS. STAT. § 971.13(3)(d). After release, the NGI defendant is subject to the conditions set by the court as well as the department's rules. Sec. 971.17(3)(e). The department

may take an NGI defendant back into custody if the department believes that the NGI defendant has violated a condition or rule, "or that the safety of the person or others requires that conditional release be revoked." Sec. 971.17(3)(e). Upon detention, the department has seventy-two hours to file a petition to revoke the order for conditional release. Sec. 971.17(3)(e). The circuit court must then hold a hearing on the petition within thirty days. Sec. 971.17(3)(e).

¶16 At this revocation hearing, the State "has the burden of proving by clear and convincing evidence that any rule or condition of release has been violated, or that the safety of the person or others requires that conditional release be revoked." WIS. STAT. § 971.13(3)(e). "If the court determines after hearing that any rule or condition of release has been violated, or that the safety of the person or others requires that conditional release be revoked, it may revoke the order for conditional release" and order placement in institutional care. Sec. 971.17(3)(e).

¶17 As stated, Anderson argues that due process requires that a court may revoke an NGI defendant's conditional release and order institutional placement only if the court makes a finding of dangerousness; that the State did not present sufficient evidence to prove dangerousness; and that WIS. STAT. § 971.17(3)(e) is unconstitutional to the extent that it permits a court to revoke an NGI defendant's conditional release and order institutional placement without a finding of dangerousness.

¶18 The due process clause protects the right to "[f]reedom from bodily restraint … from arbitrary government action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Anderson bases his due process argument on both the United States Supreme Court's decision in *Foucha* and our supreme court's decision in *State v.*

*Randall*, 192 Wis. 2d 800, 532 N.W.2d 94 (1995).[5]  Both *Foucha* and *Randall I* address the substantive due process requirements for initial commitment and institutional placement.  Anderson argues that, to the extent that WIS. STAT. § 971.17(3)(e) permits recommitment and institutional placement without proof of dangerousness, it fails to satisfy due process under *Foucha* and *Randall I*.

¶19    Accordingly, Anderson urges us to construe WIS. STAT. § 971.17(3)(e) as requiring a finding of dangerousness in order to revoke an NGI defendant's conditional release.  *See State v. Mahone*, 127 Wis. 2d 364, 369, 379 N.W.2d 878 (Ct. App. 1985) ("[A]ppellate courts may construe [a] constitutionally deficient statute[] to include constitutionally required provisions … in order to salvage the statute.").

¶20    The State argues that Anderson's reliance on *Foucha* and *Randall I* is misplaced and that he fails to demonstrate that the statute is unconstitutional in violation of due process.  Alternatively, the State argues that there is no need to consider Anderson's constitutional due process claim because the State proved him dangerous.  As we understand the State's alternative argument, if the circuit court found that Anderson was dangerous and we affirm the finding of dangerousness, then we need not address whether such a finding is necessary to revoke Anderson's conditional release.  *See Labor & Farm Party v. Elections*

---

[5] The defendant in *Randall* subsequently filed additional appeals relating to his continued NGI commitment in *State v. Randall*, 222 Wis. 2d 53, 58-59, 586 N.W.2d 318 (Ct. App. 1998) and *State v. Randall*, 2011 WI App 102, 336 Wis. 2d 399, 802 N.W.2d 194.  In this appeal, Anderson relies on the initial decision in 1995 and we also reference the later decision in 2011.  To avoid confusion, we refer to the 1995 decision as "*Randall I*" and the 2011 decision as "*Randall III*."

*Bd.*, 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984) ("This court does not normally decide constitutional questions if the case can be resolved on other grounds.").[6]

¶21　We agree with the State's alternative argument. The circuit court did, in fact, determine that Anderson was dangerous. Specifically, in its oral ruling granting the State's petition for revocation, the court determined that the State had proved that the safety of A.B. required revocation. Likewise, in the court's order for Anderson's subsequent placement in institutional care, the circuit court determined "that conditional release would pose a significant risk of bodily harm to the defendant or others." While during the hearing on Anderson's motion for postdisposition relief the court rejected Anderson's constitutional due process claim and concluded that it was not required to find dangerousness, the court did explain that it found that the "safety concern" warranted revocation. As we explain below, the court's finding of a safety concern was based on evidence supporting its determination of dangerousness. Accordingly, we proceed to review whether the State presented sufficient evidence to support the court's determination of dangerousness.

¶22　As to the appropriate standard of review, both parties initially direct us to *State v. Jefferson*, 163 Wis. 2d 332, 471 N.W.2d 274 (Ct. App. 1991). In

---

[6] Anderson argues that *Labor & Farm Party v. Elections Board*, 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984), is inapposite because that case did not involve a facial challenge to a statute, as Anderson raises here. However, it is a "generally recognized rule[] of appellate practice … that the court will ordinarily not consider the constitutionality of a statute unless such a decision is essential to the determination of the question before the court." *State v. Hamilton*, 120 Wis. 2d 532, 540, 356 N.W.2d 169 (1984); *see also Smith v. Journal Co.*, 271 Wis. 384, 390, 73 N.W.2d 429 (1955) ("We should not consider the question of the constitutionality of a legislative act unless a decision respecting its validity is essential to the determination of the controversy before us.").

*Jefferson*, we reviewed a circuit court order revoking conditional release using a mixed standard of review in which we defer to the court's factual findings unless they are clearly erroneous but review independently the court's application of the law to those facts. *Id.* at 338. However, in that case we were not reviewing a determination of dangerousness, meaning a significant risk of bodily harm or of serious property damage. *Id.* at 338-39.

¶23 In more recent cases, when we have reviewed a circuit court's determination of an NGI defendant's dangerousness, meaning risk of bodily harm or of serious property damage, we have applied a sufficiency of the evidence test. *See, e.g.*, *State v. Randall*, 2011 WI App 102, ¶¶13, 14, 336 Wis. 2d 399, 802 N.W.2d 194 (*Randall III*) (applying the sufficiency of the evidence test to a court's determination of dangerousness in denying a petition for conditional release); *State v. Wilinski*, 2008 WI App 170, ¶12, 314 Wis. 2d 643, 762 N.W.2d 399 (concluding that the proper standard of review of a court's determination of dangerousness in ordering an initial commitment and institutional placement under WIS. STAT. § 971.17(3)(a) is the sufficiency of the evidence standard).

¶24 Because we are assuming that the revocation of conditional release requires that same determination of dangerousness as in these most recent cases concerning the initial commitment and institutional placement of an NGI defendant and the denial of a petition for conditional release from that placement, we apply the same standard of review here as in those other cases. That standard of review, sufficiency of the evidence, is consistent with how both parties ultimately frame their arguments, namely, whether the State presented sufficient evidence to support the circuit court's determination of dangerousness.

11

¶25    As ***Randall III*** explains, in determining whether the sufficiency of the evidence supports the circuit court's order, "we give deference to the [circuit] court's determination of credibility and evaluation of the evidence and draw on its reasoning and adopt the [circuit] court's reasonable inferences." ***Randall III***, 336 Wis. 2d 399, ¶14.  We will review the record and uphold the court's order "if credible evidence exists to support the [circuit] court's finding of continued dangerousness." ***Id.***, ¶17.

¶26    For the specific factors relevant to the circuit court's determination of dangerousness, the parties direct us to WIS. STAT. § 971.17(3)(a), which addresses dangerousness in the context of granting or denying an order for commitment and institutional placement, and § 971.17(4)(d), which addresses dangerousness in the context of evaluating a petition for conditional release from institutional placement.  Both statutes provide the identical non-exhaustive list of factors that may be considered by the court in determining dangerousness, including "the nature and circumstances of the crime" and "the person's mental history and present mental condition."  Secs. 971.17(3)(a); 971.17(4)(d); ***Randall III***, 336 Wis. 2d 399, ¶16.  Additionally, in determining dangerousness, the court may evaluate an NGI defendant's "past performance while institutionalized and conditionally released." ***State v. Klapps***, 2021 WI App 5, ¶39 n.10, 395 Wis. 2d 743, 954 N.W.2d 38.  That includes an NGI defendant being deceitful, refusing to accept responsibility for the defendant's actions, "deciding [the defendant is] going to do things as [the defendant] wishes to," and other "inappropriate behavior" that may or may not involve violence. ***Randall III***, 336 Wis. 2d 399, ¶¶24-27, 29.

¶27    Based on our review of the record, we conclude that the credible evidence of Anderson's behavior regarding A.B. and the domestic abuse

injunction and of Anderson's history of aggression, along with reasonable inferences therefrom, support the circuit court's determination of dangerousness in this case.

¶28    It can be reasonably inferred that Anderson was likely to continue to violate the domestic abuse injunction prohibiting contact with A.B. and, thereby, threaten A.B.'s safety, from Anderson's own assertions that he did not know the rules of the injunction and that he intended to "keep[] an eye on [A.B.]," and from the officer's testimony that the complaint she responded to was that Anderson showed up at the Bluff Bar when A.B. and her son were there and Anderson refused to leave. *See State v. Burris*, 2004 WI 91, ¶72, 273 Wis. 2d 294, 682 N.W.2d 812 ("[F]or a court to find that an individual presents a danger to others … it is not required to ignore indications that [an NGI defendant] has disregarded the rules repeatedly in the past and will do so in the future.").

¶29    The circuit court implicitly found that this threat was heightened to the level of a risk of bodily injury to A.B. or others by Anderson's history of aggression.   The court explained that Anderson has a "temper" and "that Mr. Anderson does have a history of,… allegations at least …, of violent behavior."  That "history" includes the dismissed charges involving threatening a judge and two prosecutors.   Additionally, Anderson had previously had his conditional release revoked because Anderson "engaged in threatening and aggressive behavior" towards staff and residents of the facility where he lived.

¶30    It can be reasonably inferred from Anderson's refusal to acknowledge a problem with his "keeping an eye on A.B." behavior, together with his history of aggression, that the threat was such that he posed a significant risk of bodily harm to A.B.   *See Randall III*, 336 Wis. 2d 399, ¶¶24-26 (an NGI

defendant's refusal to accept responsibility for the defendant's actions and "deciding [the defendant's] going to do things as [the defendant] wishes to," are factors that the court may consider in reaching a dangerousness determination).

¶31 As the circuit court explained, Anderson "certainly should not be of a mindset that [he] can keep tabs on [A.B.]," and this mindset undermines the notion that Anderson was "diligent about avoiding any contact with [A.B.]." The court discredited Anderson's telling the officer that "he found out after he got in [to the Bluff Bar] that [A.B.] was there and left," explaining that "the credibility of that is called into question by other statements that the defendant made on the video including 'what if I am following her, what's wrong with that[?]'" The court further indicated that the evidence that Anderson refused to acknowledge that he was divorced increased the risk of bodily injury to A.B. in the course of his continuing to come into contact with her, in violation of the injunction.

¶32 Finally, the circuit court also noted the significant risk of bodily harm to Anderson and persons other than A.B. when the court considered whether Anderson violated a rule or condition of his release prohibiting him from being in an establishment with the primary purpose of serving alcohol. Specifically, the court explained that, in the context of Anderson's "keeping an eye on A.B." at the Bluff Bar, Anderson could end up in a situation where things went "the wrong way" or someone could "push [Anderson's] buttons or whatever else and things escalate." *See Burris*, 273 Wis. 2d 294, ¶72 ("A court is not forced to wait until overtly dangerous acts have been committed" in order to "find that an individual presents a danger to others.").

¶33 Anderson's arguments that the evidence does not support a determination of dangerousness are not persuasive. Specifically, Anderson argues

that the State did not present any evidence that he "actually did stalk [A.B.] or violate his domestic abuse restraining order." However, the officer testified that she reviewed the injunction before meeting with Anderson and told him that his being at the bar at the same time as A.B. violated the injunction because the injunction prohibited him from being "on the same premise" as A.B. The circuit court also confirmed that the injunction prohibited Anderson from being "at any location temporarily occupied by [A.B.]." And, the evidence credited by the circuit court showed that Anderson was in the Bluff Bar when A.B. was there, prompting her 911 call to the police. This argument also disregards the evidence that Anderson was "keeping an eye on [A.B.]" and that he saw nothing wrong with following her. Anderson essentially asks that we draw only inferences favorable to him, but that is not the standard. Anderson also argues that his history of aggression "was the same when the court ordered conditional release, so it cannot provide the basis for revoking conditional release now." However, as explained above, it is properly considered together with the new facts since Anderson's conditional release.

¶34 While this may on the cold record before us seem like a close case, we conclude that the evidence credited by the circuit court, along with the

reasonable inferences from that evidence, support its determination of dangerousness.[7]

## CONCLUSION

¶35 For the reasons stated, we affirm the circuit court's orders revoking Anderson's conditional release and returning him to institutional placement.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Because we affirm the circuit court's revocation of Anderson's conditional release based on our assumption that the statute requires a determination of dangerousness and our conclusion that credible evidence supports the court's determination of dangerousness here, we do not address the parties' arguments about whether the State proved that the safety of others (to the extent that that differs from dangerousness) required that Anderson's conditional release be revoked or that Anderson violated a rule or condition of his release. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (if a decision on one issue disposes of an appeal, we will not generally decide the other issues raised).