COURT OF APPEALS
DECISION
DATED AND FILED

September 12, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP409-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2004CF124

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GRAHAM L. STOWE,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Brown County: KENDALL M. KELLEY, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Graham Stowe appeals an order denying his petition for conditional release under WIS. STAT. § 971.17(4)(d) (2021-22).[1] He argues that § 971.17(4)(d) is facially unconstitutional because it permits the continued involuntary confinement of a person who does not have a present mental disease or defect. Stowe also contends that the State failed to prove by clear and convincing evidence that he would pose a significant risk of harm to himself, others or property if he were conditionally released. We reject his arguments and affirm.

## BACKGROUND

¶2    We have previously summarized in a prior opinion some of the pertinent facts in this appeal:

> A criminal complaint alleged that, in the early morning hours of February 9, 2004, Stowe entered his ex-girlfriend's residence and forced her and their two-year-old daughter out of bed at gunpoint. Stowe subsequently tied up and handcuffed his ex-girlfriend, her minor brother, and her father. He beat her father with a baton and doused him with gasoline. Stowe repeatedly stated he was going to take his ex-girlfriend somewhere and force her to watch him commit suicide. He also threatened to kill her father and sister. Stowe's ex-girlfriend was ultimately able to call 911, and she later escaped with her daughter after police arrived at the residence. While police remained outside the residence, Stowe took some pills—after again indicating he wanted to kill himself—and then passed out. His ex-girlfriend's father and brother were then able to escape.
>
> Stowe was charged with eleven counts as a result of these events. He entered pleas of not guilty by reason of mental disease or defect (NGI) to each of the charges against him. Stowe subsequently entered no[-]contest pleas to

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

first-degree recklessly endangering safety, intimidation of a victim, felony bail jumping, and three counts of false imprisonment. The circuit court found Stowe NGI [that is, not guilty by reason of mental disease or defect] with respect to those offenses, and the remaining charges were dismissed. The court ordered Stowe committed to the Department of Health and Family Services for institutional care for thirty-nine years and six months.

In April 2007, the circuit court entered an order conditionally releasing Stowe. However, in June 2009, the Department of Health Services (DHS) petitioned to revoke Stowe's conditional release. The petition alleged Stowe had violated his rules of conditional release by entering a bar where his ex-girlfriend worked, and an attached report indicated he had repeatedly violated his rules on other occasions, despite numerous warnings. The circuit court revoked Stowe's conditional release in July 2009.

Stowe petitioned for conditional release three more times between 2010 and 2012. The circuit court denied each of Stowe's petitions, and we affirmed those decisions on appeal.…

In July 2013, Stowe escaped from a minimum security unit at Mendota Mental Health Institute. The record indicates Stowe "impulsively took off from [Mendota] when he thought that security guards were going to place him in a more secure unit." He evaded capture for over three months. He was subsequently convicted of escape and sentenced to prison. After serving the initial confinement portion of his sentence, Stowe was returned to Mendota to serve the extended supervision portion of his sentence while serving his commitment and was placed in a maximum security unit.

*State v. Stowe*, No. 2016AP2367-CR, unpublished slip op. ¶¶2-6 (WI App Dec. 27, 2017) (last alteration in original; citations omitted).[2] Since 2013, Stowe

---

[2] An unpublished, per curiam opinion "may not be cited in any court of this state as precedent or authority," except as otherwise provided in WIS. STAT. RULE 809.23(3)(a). *See id.* We do not, however, rely on *State v. Stowe*, No. 2016AP2367-CR, unpublished slip op. (WI App Dec. 27, 2017), as precedent or authority. Rather, we cite it to efficiently summarize some of the pertinent facts, which are supported by the record in this appeal.

has filed several other petitions for conditional release, but those petitions were either denied by the circuit court or withdrawn by Stowe.

¶3      In July 2021, Stowe filed a new petition for conditional release—the petition at issue in this appeal. The circuit court, in turn, ordered that Stowe be examined by Drs. Deborah Collins and Robert Barahal to evaluate whether Stowe "is appropriate for conditional release." *See* WIS. STAT. § 971.17(4)(c). Collins and Barahal filed written reports, and, shortly thereafter, the court held a hearing on Stowe's petition, at which Collins, Barahal, three Mendota employees, and Stowe testified.

¶4      Doctor Collins opined "to a reasonable degree of professional certainty that Mr. Stowe, if conditionally released at this time, would pose a significant risk of bodily harm to himself, others, or serious property damage." The primary factors that informed Collins' opinion were Stowe's index offenses, his extensive legal history, "a remarkable pattern of antisocial behavior," and a 2017 suicide attempt. Collins also noted that "authority figures" were "a real problem area" for Stowe and that he would continue to encounter authority figures if he were conditionally released. As for a diagnosis, Collins believed that Stowe had an "[o]ther specified personality disorder with antisocial traits and [an u]nspecified other (or unknown) substance-related disorder."

¶5      Conversely, Dr. Barahal opined, to a reasonable degree of professional certainty, that Stowe would pose a "low" risk of bodily harm to himself or others if he were conditionally released and that he endorsed Stowe's conditional release "[w]ith the appropriate safeguards in place." Among other things, Barahal noted that Stowe was removed from "suicide precautions" around 2018 and that there have not been any reports of Stowe causing bodily harm to

others since 2004. Barahal acknowledged that Stowe had "four lesser events since January of 2020," but he stated that none of those incidents involved violence and he considered Stowe to have "a very good track record." Barahal also recognized that Stowe did not have a mental illness, but he agreed with Collins that Stowe had "a variant of antisocial personality disorder."

¶6 Most of the witnesses also discussed an August 2020 incident in which Stowe had an altercation with another patient at Mendota. According to a second-by-second narrative of the surveillance footage, another patient appeared to spit on Stowe while Stowe was watching television, prompting Stowe to stand up and walk toward the patient. The patient then "swung" his hands at Stowe several times, apparently striking Stowe in the face and neck area at least once. Mendota staff members then entered the room, ended the standoff between Stowe and the patient, and sent them both to their respective rooms. Stowe described this narrative in his testimony and emphasized that "at no point did [the footage] show [him] swinging … [or] provoking that attack."

¶7 Khalipha Sanneh, a nurse clinician at Mendota, testified that he did not witness the actual August 2020 altercation but interacted with Stowe immediately after it occurred. Sanneh stated that Stowe was "quite angry," "disrespectful," used "foul language," refused to speak to Sanneh, and said he would "only talk to an American." Sanneh also noted that Stowe "refuse[d] to go … where [Mendota employees] wanted [him] to go" and that they had to "put hands on" Stowe while escorting him to his seclusion room. Sanneh acknowledged, however, that Stowe was generally respectful and positive in other interactions.

¶8      Sanneh also identified a report that he had helped prepare after the incident, which was later entered into evidence. That report included a narrative written by a different nurse who observed part of the incident. The nurse stated that Stowe "postur[ed] at" the patient who allegedly spat on him and that Stowe directed a profane, racial epithet at that patient. The nurse also described Stowe's behavior as being "uncooperative, non-redirectable, unpredictable and jeopardizing the safety and security of the unit." At one point, Stowe apparently stated that "he does not know why there are black people in this country, and that he wishes that they were shot dead and moved back to where they came from."

¶9      Tyson Varney, a unit manager of the patient transition unit at Mendota, testified that he had reviewed reports and security camera footage from the August 2020 altercation and did not believe Stowe "was violent" or "physically aggressive" toward the other patient. Varney further described his typical interactions with Stowe as being "calm" and "appropriate." Varney noted that Stowe's security level is the "least restrictive" and that Stowe is being "administratively held" in a maximum security unit because of his "history of elopement," not because of any violent or dangerous conduct.

¶10     Finally, Jennifer Zehr, a clinical social worker at Mendota, testified that she and Stowe had weekly, individual therapy meetings for a period of time. She stated that Stowe "demonstrated good insight," accomplished the goals that they initially set, and made progress. Zehr also discussed a letter from Stowe's treatment team, which stated that "Stowe has consistently demonstrated the ability to remain safe on the unit, interact with peers and staff, and has not experienced seclusion or restraint for a period of one year."

¶11 Following the witnesses' testimony and oral argument, the circuit court denied Stowe's petition for conditional release. From the outset, the court noted that "the language in [Dr. Barahal's] report … tends to be much more aspirational than it does concrete." The court also noted that it perceived Barahal's testimony and demeanor "as intentional advocacy on the part of Mr. Stowe rather than a dispassionate presentation of reasoned conclusions that are based on the current facts and circumstances and the relevant and applicable science." In reaching its decision, the court also considered Stowe's index offenses, his conduct that led to the prior revocation of his conditional release, his 2013 escape, his potential for self-harm, the August 2020 altercation, and his victim mentality. Ultimately, the court found that if conditionally released, Stowe would "pose[] a significant risk of bodily harm to himself or others."

¶12 Stowe now appeals.[3] Additional facts will be provided as necessary below.

## DISCUSSION

### I. Constitutionality of WIS. STAT. § 971.17(4)(d)

¶13 Stowe argues that WIS. STAT. § 971.17(4)(d) is facially unconstitutional because it permits the continued involuntary confinement of a person who does not have a present mental disease or defect. Stowe acknowledges that our supreme court has "upheld a predecessor NGI conditional

---

[3] On February 17, 2023, we placed this appeal on hold pending the resolution of Stowe's 2019 petition for conditional release that we remanded in *State v. Stowe*, No. 2021AP431-CR, unpublished slip op. (WI App Feb. 17, 2023). We later removed the hold after Stowe withdrew his 2019 petition.

release statute against a facial challenge" in *State v. Randall*, 192 Wis. 2d 800, 532 N.W.2d 94 (1995) (hereinafter, "*Randall I*"), even though that statute "permit[ed] the continued confinement of a sane but 'dangerous' insanity acquittee." *See id.* at 824, 837. Nonetheless, he argues that *Randall I* was "wrongly decided" because the United States Supreme Court had previously held that an NGI "acquittee may be held as long as he is both mentally ill and dangerous, but no longer." *See Foucha v. Louisiana*, 504 U.S. 71, 77 (1992). Stowe concedes that we have rejected his previous facial challenges to § 971.17(4)(d) based on *Randall I*, but he nevertheless "renews and preserves the facial challenge for subsequent review."

¶14 As the State correctly observes—and Stowe concedes—we are bound by our supreme court's prior precedent in *Randall I*. This court does not have the "power to overrule, modify or withdraw language from a previous supreme court case." *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). Accordingly, we reject Stowe's argument that WIS. STAT. § 971.17(4)(d) is facially unconstitutional. *See Randall I*, 192 Wis. 2d at 833 ("We read *Foucha* to permit the continued confinement of insanity acquittees based on dangerousness alone under a statutory scheme, such as Wisconsin's, where the nature of the commitment bears some reasonable relation to the purposes for which the individual is committed.").

## II. Sufficiency of the evidence

¶15 Stowe next argues that the State failed to prove, by clear and convincing evidence, that he would pose a significant risk of harm to himself or others if he were conditionally released. In particular, Stowe emphasizes that his index offenses occurred nearly twenty years ago, that he "has not committed a

violent act since the index offense[s]," and that his treatment team has advocated for him to be transferred to a less secure treatment facility. Stowe also faults the circuit court for "heavily [relying] on the index offense[s] and the circumstances that led to Stowe's revocation from conditional release more than a decade ago."

¶16    When presented with a properly filed petition for conditional release under WIS. STAT. § 971.17(4), the circuit court "shall grant the petition unless it finds by clear and convincing evidence that the [petitioner] would pose a significant risk of bodily harm to himself or herself or to others or of serious property damage if conditionally released."[4]   Sec. 971.17(4)(d).   In making that determination, the court may consider:

> the nature and circumstances of the crime, the [petitioner's] mental history and present mental condition, where the [petitioner] will live, how the [petitioner] will support himself or herself, what arrangements are available to ensure that the [petitioner] has access to and will take necessary medication, and what arrangements are possible for treatment beyond medication.

*Id.*  These statutory factors are not an exhaustive list, *see id.*, but they guide courts in "a careful balancing of society's interest in protection from harmful conduct against the [petitioner's] interest in personal liberty and autonomy," *see **Randall I***, 192 Wis. 2d at 839.

¶17    As an initial matter, the parties dispute the relevant standard of review. Stowe argues that we should employ the mixed standard of review set forth in ***State v. Jefferson***, 163 Wis. 2d 332, 471 N.W.2d 274 (Ct. App. 1991),

---

[4] The circuit court did not find that Stowe would pose a significant risk of serious property damage if he were conditionally released. We therefore confine our analysis to the evidence supporting Stowe's significant risk of bodily harm to himself or others.

which defers to the circuit court's factual findings but independently determines, as a matter of law, whether those facts establish dangerousness. *See id.* at 338. The State, on the other hand, argues that the proper standard of review is the sufficiency of the evidence test applied in *State v. Randall*, 2011 WI App 102, 336 Wis. 2d 399, 802 N.W.2d 194 (hereinafter, "*Randall III*"). In reply, Stowe contends that *Randall III* "wrongly departed from [the] well-established standard" in *Jefferson*.

¶18 In *Randall III¸* we held that the sufficiency of the evidence test is the proper standard of review for a circuit court's conditional release determination. *Randall III*, 336 Wis. 2d 399, ¶13. In doing so, we rejected the petitioner's argument that, pursuant to *Jefferson*, we should independently review the circuit court's dangerousness determination. *Randall III*, 336 Wis. 2d 399, ¶¶11, 13. We concluded that *Jefferson* was distinguishable because it involved "a review of a revocation of conditional release," whereas *Randall III* involved a circuit court's "denial of conditional release in the first instance." *Randall III*, 336 Wis. 2d 399, ¶12. This case, like *Randall III*, involves the denial of conditional release in the first instance, rather than the revocation of conditional release. *Randall III* is therefore controlling with respect to the proper standard of review.

¶19 "The sufficiency of the evidence test asks whether a [circuit] court could reasonably be convinced by evidence it has a right to believe and accept as true." *Id.*, ¶13 (quoting *State v. Wilinski*, 2008 WI App 170, ¶12, 314 Wis. 2d 643, 762 N.W.2d 399). In a sufficiency of the evidence review, we defer to the circuit court's credibility determinations and evaluation of the evidence. *Id.*, ¶14. We also "draw on [the court's] reasoning and adopt [its] reasonable inferences." *Id.*

10

¶20    Here, sufficient evidence supported the circuit court's determination that Stowe would pose a significant risk of bodily harm to himself or to others if he were conditionally released. Doctor Collins expressly opined that Stowe would pose such a significant risk, and Stowe does not challenge Collins' ability to provide that opinion. Moreover, Stowe's "horrific" and violent index offenses, combined with his conduct leading to the revocation of his conditional release, his 2013 escape, his 2017 suicide attempt, and his recent loss of control during the August 2020 incident, provide a sufficient basis for the court to infer and believe that Stowe would pose a significant risk of bodily harm to himself or to others if he were conditionally released.

¶21    Stowe disagrees with the circuit court's ultimate findings, suggesting the court gave too much weight to his index offenses and his revocation from conditional release. To that end, Stowe stresses that he is no longer mentally ill, has not committed any acts of violence since the index offenses, and has made "significant progress." Stowe also suggests that his nonviolent response to the August 2020 incident should be viewed as significant progress.

¶22    Although Stowe views his conduct and progress in the light most favorable to his position, the circuit court did not share those same views, nor was it required to, based on the available evidence. As the court explained, it considered Stowe's more recent conduct—i.e., the August 2020 incident—in light of Stowe's index offenses, which demonstrated Stowe's capacity to harm himself or others, and which is a permissible consideration under WIS. STAT. § 971.17(4)(d). The court also expressed a reasonable concern about Stowe's lack of control during the August 2020 incident, and it reasonably inferred that Stowe had not made enough progress to reduce his significant risk of harm to himself or others. Stowe might not have committed any recent acts of violence toward

11

others, but the court inferred that Stowe is better behaved in Mendota because of the "controlled environment" and his awareness that there will be "an immediate and perhaps even harsh response to [losing] … control." Finally, the court reasonably believed that Stowe's risk of self-harm—which was evident as recently as 2017, when he attempted suicide—aggravated his risk to others because he might seek to hurt others while trying to hurt himself, which he did during his index offenses.

¶23 Stowe also suggests that the State failed to present any "evidence of current dangerousness." We disagree. The circuit court was permitted to infer from the evidence—including the more recent August 2020 incident—that Stowe would still pose a significant risk of bodily harm to himself or others if he were conditionally released. Even though the record contains some generally positive evidence about Stowe's behavior, the court was not required to give that evidence any greater weight than the other evidence in the record. Again, we are required to defer to the court's evaluation of the evidence and its inferences therefrom. *See Randall III*, 336 Wis. 2d 399, ¶14. Accordingly, we conclude that the court had sufficient evidence to find that Stowe would pose a significant risk of bodily harm to himself or others.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.